UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| YOGREY AARON BLANCO BASTIDAS,<br><br>Petitioner,<br><br>v.<br><br>WARDEN,<br><br>Respondent. | CAUSE NO. 3:26-CV-1276-CCB-SJF |

**OPINION AND ORDER**

Immigration detainee Yogrey Aaron Blanco Bastidas, a litigant without counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging he is unlawfully confined in violation of the laws or Constitution of the United States. (ECF 1.)

Mr. Blanco Bastidas is a citizen of Venezuela who entered the United States without inspection in 2023. (ECF 6-1 at 14.) He was briefly detained by United States Border Patrol agents near the United States-Mexico border in Texas, served with a notice to appear in immigration court, and released on his own recognizance. (*Id.*) He was later granted Temporary Protected Status ("TPS"), which gave him temporary protection from removal and authorization to work in the United States.[1] *See* 8 U.S.C. § 1254a(a)(1).

---

[1] The TPS statute was enacted in 1990 "to provide short-term humanitarian relief for aliens who cannot safely return to their home countries due to events such as armed conflict or natural disaster." *Mullin v. Doe*, 146 S. Ct. 2121, 2128 (2026). Responsibility for TPS designations rests with the Secretary of the Department of Homeland Security (DHS). *Id.* at 2129 (citing 6 U.S.C. §§ 552(d), 557). In March 2021, former DHS Secretary Alejandro Mayorkas designated Venezuela for TPS, and the designation was extended several times, most recently in early January 2025, with an expiration of October 2, 2026. *See* 86 Fed. Reg. 13574-01 (Mar. 9, 2021); 87 Fed. Reg. 55024-01 (Sept. 8, 2022); 88 Fed. Reg. 68130 (Oct. 3, 2023); 90 Fed. Reg. 5961-01 (Jan. 17, 2025). Once a country is designated for TPS, citizens of that country may apply for protection, as Mr. Blanco Bastidas did here. *See* 8 U.S.C. § 1254a(a)(1).

In 2024, Mr. Blanco Bastidas was arrested by police in Illinois for domestic battery. (ECF 6-1 at 14.) He asserts, without contradiction by the government, that this charge was later dismissed. (ECF 1 at 5.) In August 2026, he was taken into custody by Immigration and Customs Enforcement (ICE) agents in Indiana pursuant to an administrative warrant. (ECF 6-1 at 14, 16.) He was then transferred to Miami Correctional Facility, where he is being held pending the conclusion of his removal proceedings. (ECF 1 at 2.)

Mr. Blanco Bastidas argues that immigration officials have not given him an opportunity for release on bond because they view him as ineligible for bond under 8 U.S.C. § 1225(b)(2). (ECF 1.) He argues this statutory provision does not apply to him, and that his detention without an opportunity for bond violates applicable statutes and the Fifth Amendment Due Process Clause. (*Id.* at 5-8.) He seeks immediate release from custody or a prompt bond hearing before an immigration judge. (*Id.* at 8.)

In an order to show cause, the court directed the Warden to address the petition in light of *De Jesús Aguilar v. English*, No. 3:25-CV-898 DRL-SJF, 2025 WL 3280219, 8 (N.D. Ind. Nov. 25, 2025), and subsequent cases, which joined the overwhelming majority of other district courts in concluding that § 1225(b)(2) does not apply to noncitizens who are not "seeking admission" at a port of entry and are instead arrested within the interior of the United States. (ECF 3.) The parties were instructed only to brief "what is different or new, not what has been decided, and those issues particular to this petitioner." (*Id.* at 4.) The Warden filed an answer (ECF 6), and Mr. Blanco Bastidas filed a reply (ECF 7).

The Seventh Circuit recently joined a number of other courts in holding that "[a]liens present in the country without admission and not 'seeking admission' fall under

Section 1226, not Section 1225(b)(2)(A), and are eligible for bond hearings subject to the INA's other requirements."[2] *Cirrus Rojas v. Olson*, 183 F.4th 909, 915 (7th Cir. 2026); *see also Mejia Diaz v. Noem*, No. 3:25cv960, 2025 WL 3640419 (N.D. Ind. Dec. 16, 2025) (Brisco, J.); *Singh v. English*, No. 3:25cv962, 2025 WL 3713715 (N.D. Ind. Dec. 23, 2025) (Leichty, J.). In light of this decision, the Warden concedes that Mr. Blanco Bastidas's detention is governed by 8 U.S.C. § 1226, the "default rule" for detention of noncitizens who are "already present in the United States," *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018), which entitles him to an individualized bond hearing. (ECF 6.) The Warden nevertheless argues that he must request a hearing and otherwise exhaust his administrative remedies before being granted habeas relief. (*Id.* at 2.) Mr. Blanco Bastidas counters that exhaustion should not be required under the circumstances and that he is entitled to immediate release. (ECF 7.)

As a preliminary matter, Mr. Blanco Bastidas argues that the government has no right to detain him because he is a TPS recipient. (ECF 1, 7.) He cites to the TPS statute, which provides in pertinent part that an individual granted TPS "shall not be detained by

---

[2] A different panel of the Seventh Circuit concluded last year in ruling on a stay motion that the government was unlikely to succeed on its argument that the mandatory detention provision in § 1225(b)(2) applies to noncitizens arrested by ICE in the interior of the United States. *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025). A split panel subsequently affirmed the judgment of the district court in part, but there was no majority consensus on the issue of whether 8 U.S.C. § 1225(b)(2) permits the mandatory detention of all noncitizens present in the United States without legal status. *See Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 175 F.4th 828 (7th Cir. 2026). One judge rejected the government's interpretation and another adopted it, while the third judge concluded there was no basis to reach that issue. *Id.* The Second, Fourth, Sixth, Ninth, Tenth, and Eleventh Circuits have rejected the government's interpretation of § 1225(b)(2), whereas the Fifth and Eighth Circuits have approved it. *See Lopez Garcia v. Guadian*, ___F.4th___, 2026 WL 2661092 (4th Cir. Sept. 10, 2026); *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026); *Santillan Quiroz v. Mullin,* 180 F.4th 1226 (10th Cir. 2026); *Lopez-Campos v. Raycraft,* 175 F.4th 713 (6th Cir. 2026); *Hernandez Alvarez v. Warden,* 175 F.4th 1258 (11th Cir. 2026); *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026).

the Attorney General on the basis of the alien's immigration status in the United States." 8 U.S.C. § 1254a(d)(4). The Warden counters that Mr. Blanco Bastidas does not currently hold TPS, because the program was terminated as to citizens of Venezuela. (ECF 6 at 3-4.)

Whether Mr. Blanco Bastidas is currently a TPS recipient presents a thorny and complex question. Seemingly, the answer is straightforward, because he provides documentation showing that United States Citizenship and Immigrations Services granted him TPS through October 2, 2026. (ECF 1-1 at 16.) However, former Secretary of DHS Kristi Noem terminated the TPS program for Venezuelan nationals on February 5, 2025, effective April 7, 2025. 90 Fed. Reg. 9041–01 (Feb. 5, 2025); *see also Nat'l TPS Alliance v. Noem*, 166 F.4th 739, 751 (9th Cir. 2026). There has been a spate of litigation about her actions, leading to decisions in a California case setting aside the termination as contrary to the statute and unconstitutional. *See Nat'l TPS Alliance v. Noem*, 798 F. Supp. 3d 1108 (N.D. Cal. 2025). Upon applications by the government, the Supreme Court issued two emergency orders staying the district court's orders during the pendency of the government's appeal to the Ninth Circuit and "disposition of a petition for a writ of certiorari, if such writ is timely sought." *Noem v. Nat'l TPS Alliance*, 146 S. Ct. 23, 24 (2025); *see also Noem v. Nat'l TPS Alliance,* 145 S. Ct. 2728 (2025). The Ninth Circuit subsequently affirmed the judgment, and the government's petition for writ of certiorari to the Supreme Court remains pending. *Nat'l TPS Alliance*, 166 F.4th 739; *see also Mullin*, *et al., v. National TPS Alliance, et al.,* No. 26-48 (filed July 13, 2026).

As this court interprets the relevant decisions, the Supreme Court's stays remain in effect until such time as the government's petition for certiorari is denied, or the Supreme

Court grants certiorari and issues a further ruling on the issue. *See Noem*, 146 S. Ct. at 24. The effect of the stay orders is that the Venezuela TPS program was allowed to terminate in 2025.[3] *See id.*; *see also Guevara-Hernandez v. Blanche*, No. 1:26-CV-59-ZMB, 2026 WL 1728803, at *5 (E.D. Mo. June 15, 2026) (concluding that under current law, Venezuelan citizen's TPS benefits lapsed in 2025 with Secretary Noem's termination of the TPS designation), *appeal filed, Guevara-Hernandez v. Blanche*, No. 26-2423 (8th Cir. July 16, 2026); *O.G.M. v. Sage*, Civ. No. 4:26-780, 2026 WL 1242754, at *3 n. 35 (M.D. Pa. May 6, 2026) (describing termination of TPS program for Venezuelan nationals); *Afr. Communities Together v. Noem*, 820 F. Supp. 3d 48, 72 (D. Mass.), *rev'd and remanded on other grounds sub nom. Afr. Communities Together v. Mullin*, 183 F.4th 77 (1st Cir. 2026) (observing that as a result of the Supreme Court's stay orders, "Venezuela's TPS designation . . . is not currently in effect"); *Sosa-Vasquez v. Schmidt*, No. 26-CV-600-JPS-JPS, 2026 WL 1048368, at *2 (E.D. Wis. Apr. 17, 2026) (observing that Venezuelan national had TPS "until the designation was terminated in 2025"); *Canizalez Polanco v. Unknown Party #1*, Civ. No. 1:26-747, 2026 WL 935902, at *3 n. 2 (W.D. Mich. Apr. 7, 2026) (observing that "the 2023 TPS Designation for Venezuela effectively expired on April 2, 2025").

---

[3] By regulation, a TPS recipient's status is lost 60 days after a TPS designation is terminated. 8 C.F.R. § 244.19. There is a narrow category of Venezuelan TPS recipients—those who received eligibility determinations prior to February 5, 2025, under an earlier grant of authority not altered by former Secretary Noem—who will maintain their status until October 2, 2026. *See* 90 Fed. Reg. 9040-01; *see also* https://www.uscis.gov/i-9-central/form-i-9-related-news/update-supreme-court-order-for-tps-venezuela-0 (last visited Sept. 18, 2026). This is of no assistance to Mr. Blanco Bastidas, because he received his eligibility determination after that date. (*See* ECF 1-1 at 16.)

This means that Mr. Blanco Bastidas does not currently hold TPS and is not entitled to benefits under this statute.[4] His detention is governed instead by § 1226(a), as with any other noncitizen who is present in the United States without legal status. *See Cirrus Rojas*, 183 F.4th at 915. He is entitled to an individualized bond hearing under that statute, but as the Warden points out, he has not yet requested one. (ECF 6.)

The "general rule" is that parties must "exhaust prescribed administrative remedies before seeking relief from the federal courts." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (superseded by statute on other grounds). "[E]xhaustion of administrative remedies is not statutorily mandated" in cases brought under § 2241. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (citation omitted). Therefore, whether to require exhaustion is a matter of "sound judicial discretion." *Id.* The court may require administrative exhaustion in § 2241 cases challenging a noncitizen's detention as a matter of judicial economy or administrative comity, but "individual interests demand that exhaustion be excused when . . . appealing through the administrative process would be futile because the agency . . . has predetermined the issue." *Id.* (citation omitted).

Mr. Blanco Bastidas argues that it would be futile for him to exhaust (ECF 1 at 5), but in light of the Seventh Circuit's recent opinion in *Cirrus Rojas*, futility is no longer reasonable to presume. The Warden concedes that he is entitled a bond hearing under *Cirrus Rojas*, and principles of judicial estoppel would limit the government's ability to

---

[4] If further events lead to the restoration of the TPS program for Venezuelan nationals, Mr. Blanco Bastidas is free to file a new habeas petition asserting any additional rights he may have under the TPS statute.

advance a different position in immigration court. *See Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006). Without knowing whether the government will afford him a bond hearing if he asks for one, it would be premature to grant him habeas relief. *See Kane v. Zuercher*, 344 F. App'x 267, 269 (7th Cir. 2009) (declining to excuse § 2241 habeas petitioner from exhausting and observing that he "may well be correct that the [agency's] hands are tied, but he also may be mistaken. Until he asks, we cannot know whether [the agency] may yet be able to grant some relief.").

He also suggests that it would be unfair to require exhaustion because the government detained him for the past two months without affording him a bond hearing. (ECF 7.) However, the purpose of a habeas corpus action is not to compensate the petitioner for a past injury or punish the respondent for wrongdoing; it is solely to determine whether the petitioner's current detention is lawful. *See* 28 U.S.C. § 2241; *see also U.S. ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923) ("A writ of habeas corpus is not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the prisoner can lawfully be detained in custody[.]") (internal quotation marks omitted), *limited on other grounds by I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984). Notwithstanding the government's prior policy of mandatory detention, it appears he can now obtain a bond hearing pursuant to *Cirrus Rojas*.

The court is also cognizant that the agency cannot adjudicate his Due Process claim, but this does not excuse him from exhausting. A petitioner is not permitted to skip the administrative process "by simply reconstituting his claim as constitutional and claiming futility." *Gonzalez*, 355 F.3d at 1018; *see also Mojsilovic v. INS*, 156 F.3d 743, 748 (7th Cir.

1998) ("Although due process claims do not usually require exhaustion because the [BIA] cannot adjudicate constitutional issues, the requirement applies when the petitioner's claim involves procedural errors correctable by the administrative tribunal.") (citation and internal quotation marks omitted). If he has a bond hearing, he might prevail before an immigration judge or be able to obtain relief from the Board of Immigration Appeals. 8 C.F.R. §§ 236.1(d)(3), 1236.1(d)(3). A favorable outcome in the administrative proceedings could obviate the need to reach his Due Process claim or, at a minimum, alter its factual basis. *See Z.G. v. Olson*, 834 F. Supp.3d 794, 801-02 (N.D. Ind. 2026) (Leichty, J.) (requiring exhaustion of administrative remedies in context of immigration bond determination even though petitioner raised Due Process claim, because "his entitlement to more procedure or outright release as a gloss from constitutional understandings of due process may change based on how his status and individual interests change (or become moot altogether) based on administrative proceedings").

Under these circumstances, the appropriate course is to require Mr. Blanco Bastidas to exhaust a request for bond within the agency. If he does not obtain relief through the administrative process, he is free to file a new petition.

For these reasons, the petition (ECF 1) is **DISMISSED WITHOUT PREJUDICE** for lack of exhaustion. The clerk is **DIRECTED** to enter final judgment and to close this case.

SO ORDERED on September 18, 2026.

/s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT